O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VERNON D. CARROLL, | ) | Case No. CV 10-6964-CJC (DTB) |
| Plaintiff, | ) | |
| vs. | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| CORRECTIONAL OFFICER S. | ) | MOTION TO DISMISS |
| READ, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Currently pending before the Court and ready for decision is defendants' Motion to Dismiss Plaintiff's Complaint ("Motion").  For the reasons discussed below, the Motion is granted in part and denied in part.

## PROCEEDINGS

Plaintiff, a California state prisoner, filed a <u>pro</u> <u>se</u> civil rights Complaint ("Compl.") pursuant to 42 U.S.C. § 1983 on September 28, 2010, after being granted leave to proceed in forma pauperis.  Plaintiff included various attachments ("Compl. Att.") with the Complaint.  As best the Court could glean, the gravamen of the Complaint was that defendants violated plaintiff's civil rights by harassing him and subjecting him to an invasive strip search while he was housed at the California Rehabilitation Center ("CRC") in Norco, California.  Named in the Complaint as

defendants in both their individual and official capacities were the following CRC employees: Correctional Officers S. Read ("Read") and Ellis; Warden Gray Sandor ("Sandor"); Captain M.J. Dimmitt ("Dimmitt"); Lieutenant D. Caplan ("Caplan"); and Hearing Officer G. Lares ("Lares").

On October 6, 2010, after screening the Complaint pursuant to 28 U.S.C. § 1915(e)(2), the Court dismissed the Complaint with leave to amend on the grounds that plaintiff's allegations were insufficient to state a § 1983 claim for monetary damages against defendants in their official capacities and insufficient to state a claim based on supervisory liability.

On November 3, 2010, plaintiff filed a First Amended Complaint ("FAC"). On the same date, plaintiff filed a "Motion to: Order to Amend Complaint on Some Allegd [sic] Defendant(s) under [Immune]" ("Motion to Amend"); "Motion to: Reconsider the Order of Amend not for the Relief of the Other Defendant. But a Order from the Honorable to Place an Order to Remove the 115 Written [Reprisal] Under Cover up for c/o S. Read and Retaliation" ("Motion to Reconsider"); "Motion to: Re-amend and Still Pending of Claim for Relief" ("Motion to Re-amend"); and "Motion for: Order 'Summons' Service of Subsequent Papers" ("Motion to Serve"). In an Order dated November 17, 2010, the Court denied the Motion to Amend, the Motion to Re-amend, and the Motion to Serve.  The Court granted the Motion to Reconsider, struck the FAC, and modified the October 6, 2010 Order Dismissing Complaint with Leave to Amend.  On November 17, 2010, the Court ordered the Complaint served on all defendants in their individual capacities only.

On June 23, 2011, defendants filed the instant Motion, together with a supporting Memorandum of Points and Authorities ("Mot. Mem."), on the grounds that: (1) Defendants are entitled to immunity under the Eleventh Amendment from suit for damages in their official capacities; (2) plaintiff failed to exhaust his administrative remedies; (3) the Complaint fails to comply with Fed. R. Civ. P. 8; (4)

/ / /

2

1   the Complaint fails to state a claim for relief; and (5) defendants are entitled to
2   qualified immunity.

3          Thereafter, plaintiff filed numerous briefs and motions, most of which are not
4   relevant for purposes of this Motion.   On October 17, 2011, plaintiff filed six
5   documents entitled "Motion for: Judgment on Pleadings and Agreement on Summary
6   Judgment under Consideration on Fact" (collectively, "Motions for Judgment").
7   Thereafter, the Court construed the Motion for Judgment at Docket No. 47 as
8   plaintiff's Opposition ("Opp.") to the Motion. Plaintiff included various attachments
9   ("Opp. Att.") to the Opposition.   On October 31, 2011, the Court denied the
10   remaining Motions for Judgment to the extent plaintiff intended such documents to
11   be construed as Motions for Summary Judgment. On January 31, 2012, defendants'
12   filed a Reply ("Reply") in support of the Motion.[1]

13

14                          **STANDARD OF REVIEW**

15          A Rule 12(b)(6) motion to dismiss tests the formal sufficiency of a statement
16   of claim for relief.  A complaint may be dismissed as a matter of law for failure to
17   state a claim for two reasons: (1) Lack of a cognizable legal theory; or (2) insufficient
18   facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d
19   696, 699 (9th Cir. 1990) (as amended).[2]  In determining whether the complaint states
20   a claim on which relief may be granted, its allegations of material fact must be taken

21

22          [1]     On October 26, 2011, defendants filed a Reply addressing plaintiff's
23   multiple Motions for Judgment.

24          [2]     The Court notes that Balistreri has been overruled by Bell Atl. Corp. v.
25   Twombly, 550 U.S. 544, 562-63, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), to the
26   extent that it followed the rule that, "[a] complaint should not be dismissed under
27   Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of
28   facts in support of his claim which would entitle him to relief.'" 901 F.2d at 699
    (citing Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).

1   as true and construed in the light most favorable to plaintiffs.  See Love v. United
2   States, 915 F.2d 1242, 1245 (9th Cir. 1990) (as amended); see also Lazy Y Ranch
3   Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).  Nonetheless, "the tenet that a
4   court must accept as true all of the allegations contained in a complaint is
5   inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937,
6   1949, 173 L. Ed. 2d 868 (2009).  Further, since plaintiff is appearing pro se, the Court
7   must construe the allegations of the complaint liberally.  Erickson v. Pardus, 551 U.S.
8   89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); see also Hebbe v.
9   Pliler, 611 F.3d 1202, 1205 (9th Cir. 2010) (noting that it is particularly important to
10  construe pleadings liberally where the litigant is a pro se prisoner in a civil rights
11  action).  However, "a liberal interpretation of a civil rights complaint may not supply
12  essential elements of the claim that were not initially pled."  Bruns v. Nat'l Credit
13  Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents,
14  673 F.2d 266, 268 (9th Cir. 1982)).

15  Moreover, with respect to plaintiff's pleading burden, the Supreme Court has
16  held that:

17  [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment]
18  to relief" requires more than labels and conclusions, and a formulaic
19  recitation of the elements of a cause of action will not do. . . . Factual
20  allegations must be enough to raise a right to relief above the speculative
21  level . . . on the assumption that all the allegations in the complaint are
22  true (even if doubtful in fact).

24  Twombly, 550 U.S. at 555 (internal citations omitted and alteration in original).  In
25  other words, the allegations must be plausible on the face of the complaint. See Iqbal,
26  129 S. Ct. at 1949.  The Supreme Court has held that:

27  The plausibility standard is not akin to a "probability requirement," but
28  it asks for more than a sheer possibility that a defendant has acted

4

1   unlawfully.  Where a complaint pleads facts that are "merely consistent

2   with" a defendant's liability, it "stops short of the line between

3   possibility and plausibility of 'entitlement to relief.'"

4

5   Id. (citations omitted); see also Moss v. United States Secret Serv., 572 F.3d 962, 969

6   (9th Cir. 2009) ("for a complaint to survive a motion to dismiss, the non-conclusory

7   'factual content,' and reasonable inferences from that content, must be plausibly

8   suggestive of a claim entitling the plaintiff to relief") (citing Iqbal, 129 S. Ct. at

9   1949).  In assessing the merits of a motion to dismiss, courts may consider documents

10  attached to the complaint.  See Hal Roach Studios, Inc. v. Richard Feiner & Co. Inc.,

11  896 F.2d 1542, 1555 n.19 (9th Cir.  1990) (as amended).

12

13                    **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

14          Plaintiff alleges that, on February 5, 2010, as he was exiting the law library at

15  CRC, defendants Read and Ellis stopped him to conduct a clothed body search.

16  (Compl. at 5; Compl. Att. at 1, 6.)  Read and Ellis then allegedly conducted two

17  unclothed body searches, and ordered plaintiff to expose his buttocks to them.

18  (Compl. Att. at 3, 6.)  When plaintiff asked Read why he was conducting the

19  searches, he responded, "[b]ecause I can do that." (Compl. Att. at 6.)  Plaintiff also

20  heard one of the defendants say, "[s]hut the fuck up." (Compl. at 5.)

21          Plaintiff filed an administrative grievance regarding the strip searches, alleging

22  that defendants Read and Ellis's behavior constituted sexual abuse. (Compl. Att. at

23  13.)  It appears that an inquiry was conducted on or about February 24, 2010, and

24  thereafter, Associate Warden, K. Peters, determined that there was no staff

25  misconduct regarding the alleged searches. (Compl. Att. at 3, 8, 41.)

26          Meanwhile, plaintiff apparently withdrew his administrative grievance due to

27  an agreement with defendant Read, whereby Read agreed to provide plaintiff with

28  certain personal items in exchange for the withdrawal of the grievance. (Compl. Att.

at 35, 43-44; Opp. Att. at 1.)  When Read did not provide plaintiff with the requested items, plaintiff attempted to reinstate his earlier grievance. (Compl. Att. at 43-44.) However, it appears that, on May 13, 2010, in response to plaintiff's request to reinstate his grievance, defendants Dimmitt and Caplan issued plaintiff a CDC-115 write-up ("CDC 115") for falsification of an inmate appeal, allegedly in retaliation for the filing of the earlier grievance alleging sexual misconduct. (Compl. Att. at 1, 3, 6, 25.)  The CDC-115 alleged that plaintiff falsified the agreement between Read and himself. (Comp. Att. at 25.)

Thereafter, plaintiff received a hearing regarding the CDC-115 wherein defendant Lares allegedly denied plaintiff due process by "covering up" for the other defendants. (Compl. Att. at 3, 7.)  Plaintiff was ultimately found guilty of the rules violation, and alleges that he lost 60 days of sentencing credit. (Comp. Att. at 7; Opp. Att. at 1-5.)

Based upon theses allegations, plaintiff claims violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments.  Plaintiff seeks injunctive relief and monetary damages.  (Compl. Att. at 1.)

## DISCUSSION

## I.   The Eleventh Amendment bars plaintiff's claims for monetary damages against the named defendants in their official capacities.

Defendants initially contend that they are immune under the Eleventh Amendment from suit for damages in their official capacities.  (Mot. Mem. at 3.) While plaintiff initially sued defendants in their official and individual capacities, the Court ordered the Complaint served on defendants in their individual capacities only. (See Dkt No. 13.)  Accordingly, defendants' Motion to Dismiss on the basis of the Eleventh Amendment is moot.

The Court also notes that, while defendants may not be sued in their official capacities for monetary damages, see Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988),

a prison official may be sued in his or her official capacity for injunctive relief.  See Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007).  In this action, it appears plaintiff may be attempting to sue defendants in their official capacities for injunctive relief. (See Compl. Att. at 1.)  In the event plaintiff elects to file a First Amended Complaint, plaintiff must clarify that he is intending to sue any defendant in his official capacity for injunctive relief only.

## II.   **Plaintiff has adequately exhausted his administrative remedies.**

### A.   The exhaustion of administrative remedies requirement

Under the Prison Litigation Reform Act (the "PLRA"), prisoners pursuing civil rights claims must exhaust administrative remedies before they go to the federal courts.  As amended, 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court has held that the PLRA requires a prisoner to complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the prisoner seeks money damages and such relief is not available under the administrative process.  See Booth v. Churner, 532 U.S. 731, 740-41, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); see also Jones v. Bock, 549 U.S.199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." See Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

1    It is clear that "§1997e(a) requires exhaustion before the filing of a complaint

2    and that a prisoner does not comply with this requirement by exhausting available

3    remedies during the course of the litigation."   See McKinney v. Carey, 311 F.3d

4    1198, 1199 (9th Cir. 2002) (per curiam); see also Woodford v. Ngo, 548 U.S. 81, 93-

5    94, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); Vaden v. Summerhill, 449 F.3d 1047,

6    1048 (9th Cir. 2006) ("[The] PLRA requires that a prisoner exhaust administrative

7    remedies before submitting any papers to the federal courts."); Brown v. Valoff, 422

8    F.3d 926, 942 (9th Cir. 2005) ("[A] prisoner may not proceed to federal court while

9    exhausting administrative remedies.") (emphasis in original).

10    Finally, because the PLRA exhaustion requirement is not jurisdictional, the

11    Ninth Circuit holds that failure to exhaust administrative remedies "should be treated

12    as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion."

13    Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (citing Ritza v. Int'l

14    Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988) (per

15    curiam)).  In deciding such a motion, "the court may look beyond the pleadings and

16    decide disputed issues of fact."  See id. at 1119-20.  If a prisoner has not completed

17    his administrative remedies before filing his federal suit and administrative remedies

18    are still available, the court must dismiss the action without prejudice to the prisoner

19    filing a new action after he has completed his administrative remedies.   See

20    McKinney, 311 F.3d at 1200-01.

21

22    B.   The administrative grievance process in California prisons

23    The State of California provides its prisoners and parolees with the right to

24    appeal administratively "any policy, decision, action, condition, or omission by the

25    department or its staff that the inmate or parolee can demonstrate as having a material

26    adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, §

27    3084.1(a).  In order to exhaust available administrative remedies within this system,

28    a prisoner must proceed through several levels of appeal: (1) Informal resolution; (2)

8

formal written appeal on a CDCR 602 inmate appeal form; (3) second level appeal to the institution head or designee; and (4) third level appeal to the Director of the CDCR.  See Brown, 422 F.3d at 929-30; see also Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  See Brown, 422 F.3d at 930 n.2.

C.   Analysis

Here, defendants contend that plaintiff failed to exhaust his administrative remedies as to all of his claims.  In support of their contention, defendants have submitted the declarations of the Appeals Coordinator at CRC J. Poffek ("Poffek Decl.") and Chief of Inmate Appeals D. Foston ("Foston Decl.").  According to defendants' evidence, plaintiff has only attempted to file two administrative grievances regarding the events alleged in this action.  The first grievance was filed on or about February 7, 2010, and bypassed the lower levels of review.  (Compl. Att. at 36.)  However, plaintiff subsequently withdrew this grievance prior to a decision being rendered.[3]  (Compl. Att. at 35; Poffek Decl. at ¶12, Exhibit ["Exh."] A.)  In his declaration, Mr. Poffek attested that plaintiff did not submit any other administrative grievances at the second level of review regarding the contentions alleged in the Complaint.  (Poffek Decl. at ¶13.)  The Inmate Appeals Tracking System's records

---

[3]      It appears that although plaintiff withdrew his administrative grievance, the second level of review nevertheless directed Associate Warden K. Peters to conduct a confidential inquiry into the allegations.  (Compl. Att. at 35, 41.)  See 15 Cal. Code Regs. tit. 15, § 3084.6(f) ("The withdrawal of an appeal does not preclude further administrative action by the department regarding the issue under appeal.")  The Associate Warden concluded that defendants Read and Ellis did not violate California Department of Corrections and Rehabilitation ("CDCR") policy.  (Compl. Att. at 41.)  Thus, although it is not entirely clear, it appears that, at a minimum, plaintiff's grievance was considered at the first level of review, and possibly at the second level of review.

1    confirm that the only administrative grievance filed regarding staff misconduct was

2    withdrawn on March 16, 2010.  (Poffek Decl., Exh. A.)

3          With respect to the second administrative grievance, which plaintiff attempted

4    to file at the Director's level of review, defendants contend that neither this

5    administrative grievance nor any others were accepted at the Director's level.  In his

6    declaration, Mr. Foston asserted that he was familiar with the record keeping system

7    at the Inmate Appeals Branch and was able to verify the status of third level appeals.

8    (Foston Decl. at ¶6.)  Mr. Foston attested that his staff conducted a thorough search

9    of the records kept in the Office of the Inmate Appeals Branch, which "revealed that

10   no appeals submitted by [plaintiff] concerning the allegations [of the Complaint] were

11   accepted for review by this office."  (Foston Decl. at ¶8.)  Although plaintiff

12   attempted to submit an appeal to the Director's level on or about April 28, 2010

13   (Foston Decl. Exh. A), this appeal was screened out by Mr. Foston on or about July

14   21, 2010 because plaintiff's "appeal was rejected, withdrawn or cancelled at the

15   institution level."  (Id.; Compl. Att. at 34.)  As noted, plaintiff withdrew his earlier

16   administrative grievance prior to its consideration.  (Compl. Att. at 35; Poffek Decl.

17   at ¶12, Exh. A.)  The evidence presented by defendants indicate that no other appeals

18   were received or accepted by the Inmate Appeals Branch regarding the claims alleged

19   in the Complaint.  (See Foston Decl. at ¶10, Exh. A.)

20         As explained, in order to properly exhaust his administrative remedies, a

21   prisoner must comply with the agency's deadlines and other critical procedural rules.

22   See Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an

23   agency's deadlines and other critical procedural rules . . . .").  Under California's

24   administrative grievance process, "[t]he second level [of review] shall be completed

25   prior to the [prisoner] filing at the third level."  Cal. Code Regs. tit. 15, § 3084.7(b).

26   As such, if plaintiff did not properly proceed through all levels of review, he did not

27   exhaust his administrative remedies.  See Cal. Code Regs. tit. 15, §§ 3084.6(b)(15)

28   (explaining that an appeal may be rejected if the prisoner submits the appeal to an

inappropriate level bypassing required lower level(s) of review), 3084.7(b); see also Woodford, 548 U.S. at 90.  Defendants have adduced evidence establishing that plaintiff did not proceed through all levels of review and thus, did not exhaust his available administrative remedies prior to filing the Complaint.

In his Opposition, plaintiff does not dispute defendants' assertion that he failed to exhaust his administrative remedies.  Indeed, plaintiff does not allege that he exhausted his administrative remedies.  However, evidence attached to the Complaint indicates that plaintiff attempted to reinstate the first administrative grievance pursuant to Cal. Code Regs. tit. 15 § 3084.6(f).  In particular, plaintiff sent an administrative grievance to the Warden on or about March 23, 2010 contending that he previously withdrew his February 2010 grievance based on his agreement with defendant Read, whereby Read allegedly agreed to provide plaintiff with certain items (a Sony boombox, cd's, headphones, one package of food and hygiene products, and a television) if plaintiff withdrew his grievance. (Comp. Att. at 43-44.) Although plaintiff withdrew the grievance, Read did not provide plaintiff with the agreed-upon items. (Id.) As such, by way of the March 2010 grievance, which was stamped received by the Warden's Office on March 23, 2010, plaintiff requested to the reinstate his earlier grievance, appeal Read's failure to comply with the alleged agreement, and requested that the March 2010 grievance be forwarded to Sacramento, California for review.  There is no evidence that the Warden accepted or rejected this grievance, let alone responded to this grievance in any manner.  Instead, it appears that plaintiff's March 2010 grievance prompted an investigation of plaintiff for falsifying the statements in the grievance, which ultimately resulted in a charge and conviction for falsification of an inmate appeal. (Opp. Att. at 1-5.) As best the Court can glean from the record, plaintiff appears to contend that this disciplinary charge was filed in retaliation for plaintiff's February 2010 grievance alleging sexual misconduct. (Compl. Att. at 1, 7-8.) Although plaintiff has not expressly asserted that this disciplinary investigation effectively interfered with his ability to properly

11

exhaust his administrative remedies, the Court notes that where circumstances render administrative remedies "effectively unavailable," an inmate may be excused from the exhaustion requirements. Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010). An administrative remedy becomes unavailable for purposes of exhaustion if prison officials do not respond to properly filed grievances or if they otherwise use affirmative misconduct to thwart an inmate's attempts to exhaust. See, e.g., Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010); Brown, 422 F.3d at 943 n.18; Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004).  Here, the allegations support an inference, at least at the pleading stage, that prison officials thwarted plaintiff's ability to exhaust his administrative remedies.  The evidence before the Court is that plaintiff attempted to reinstate his grievance in March 2010, but officials at CRC did not process the grievance, per se.  Instead, they charged plaintiff with a rules violation.  Had the March 2010 grievance been processed, plaintiff's April 2010 grievance to the Director's level may not have been screened out on the basis that it was premature.  Defendants have not produced any evidence addressing the March 2010 grievance or addressing whether prison officials interfered with plaintiff's ability to exhaust his administrative remedies.  As such, in the absence of any evidence to the contrary, the record reflects that plaintiff attempted through the proper grievance procedure to reinstate his earlier grievance at the second level of review, and thereafter, attempted to proceed through the Director's level, but prison staff interfered with his ability by charging him with a disciplinary violation instead of processing his grievance.  The Court concludes that defendants have not met their burden of demonstrating that plaintiff failed to exhaust his administrative remedies. See Wyatt, 315 F.3d at 1119; Brown, 422 F.3d at 936 (explaining that defendants bear the burden of proving the absence of exhaustion)  Accordingly, there is insufficient evidence to support dismissal of this action for failure to exhaust and defendants' Motion to Dismiss on this basis must be denied.

/ / /

1  **III.    Plaintiff's allegations fail to comply with the pleading requirements of**
2  **Fed. R. Civ. P. 8**

3        Defendants contend that plaintiff has failed to comply with the requirements
4  of Federal Rule of Civil Procedure 8.  (Mot. Mem. at 6.)  Fed. R. Civ. P. 8(a) requires
5  that a complaint contain "a short and plain statement of the claim showing that the
6  pleader is entitled to relief."  Rule 8(d) further provides that "[e]ach allegation must
7  be simple, concise, and direct."  As the Supreme Court has held, Rule 8(a) "requires
8  a 'showing,' rather than a blanket assertion, of entitlement to relief."  Twombly, 550
9  U.S. at 555 n.3.  Although the court must construe a pro se plaintiff's complaint
10 liberally, plaintiff nonetheless must allege a minimum factual and legal basis for each
11 claim that is sufficient to give each defendant fair notice of what plaintiff's claims are
12 and the grounds upon which they rest.  See, e.g., Brazil v. United States Dep't of the
13 Navy, 66 F.3d 193, 199 (9th Cir. 1995); McKeever v. Block, 932 F.2d 795, 798 (9th
14 Cir. 1991).  Moreover, failure to comply with Rule 8(a) constitutes an independent
15 basis for dismissal of a complaint that applies even if the claims in a complaint are
16 not found to be wholly without merit.  See McHenry v. Renne, 84 F.3d 1172, 1179
17 (9th Cir. 1996); Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

18       Here, plaintiff's allegations fail to set forth a minimum factual and legal basis
19 for his claims that is sufficient to give each defendant fair notice of the factual basis
20 for each claim, the legal basis for each claim, or the specific claims plaintiff is
21 purporting to raise against each of the named defendants.

22       First, although plaintiff purports to state one "claim" in his Complaint based
23 on a violation of his due process rights (Compl. at 5), the basis for the claim appears
24 to allege a violation of plaintiff's rights under the First Amendment, rather than his
25 due process rights under the Fourteenth Amendment.  (Id.)  Further, the allegations
26 contained in the attachment to the Complaint involve a miscellany of other purported
27 claims, including retaliation, interference with plaintiff's freedom of speech under the
28 First Amendment, invasion of privacy under the Fourth Amendment, and deliberate

13

1   indifference and cruel and unusual punishment under the Eighth Amendment.

2   However, plaintiff fails to explain how each defendant violated any of these rights,

3   other than vaguely contending that all of the claims apparently arose from the

4   February 2010 strip searches.  As the Ninth and Seventh Circuit have noted, "judges

5   are not like pigs, hunting for truffles buried in briefs." <u>Guatay Christian Fellowship</u>

6   <u>v. Cnty. of San Diego</u>, 670 F.3d 957, 987 (9th Cir. 2011) (quoting <u>Greenwood v.</u>

7   <u>FAA</u>, 28 F.3d 971, 977 (9th Cir. 1994); <u>United States v. Dunkel</u>, 927 F.2d 955, 956

8   (7th Cir. 1991) (per curiam)).  The Court cannot be charged with trying to discern

9   from plaintiff's conclusory allegations the precise nature of plaintiff's allegations.

10  Accordingly, it is entirely unclear to the Court the number or nature of the federal

11  civil rights claims that plaintiff is purporting to raise.

12       Second, plaintiff names six prison officials in the Complaint.   Plaintiff,

13  however, fails to set forth any pertinent factual allegations against most of these

14  defendants.  Plaintiff appears to simply list various civil rights violations against each

15  defendant, but fails to explain how each defendant purportedly violated such rights.

16  Accordingly, it is not entirely clear to the Court which of plaintiff's factual or legal

17  allegations relate to which claim or claims against which defendant.

18       Construing plaintiff's allegations liberally, and affording plaintiff the benefit

19  of any doubt, the Court finds that plaintiff's Complaint fails to allege sufficient

20  "factual content that allows the [C]ourt to draw the reasonable inference that the

21  defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.

22       The Court therefore finds that the Complaint does not comply with Rule 8

23  because (a) it does not contain a "short and plain statement" of plaintiff's claims

24  showing that he is entitled to relief, and (b) its allegations are insufficient to meet

25  plaintiff's threshold requirement of providing each defendant with notice of their

26  allegedly wrongful acts.

27  / / /

28  / / /

14

1    **IV.    Plaintiff's allegations are insufficient to state a federal civil rights claim**
2           **pursuant to the First Amendment against any named defendant.**

3           To the extent that plaintiff may be purporting to raise a claim pursuant to the
4    First Amendment for retaliation, his allegations are insufficient to state a claim
5    against any defendant.

6           It is well settled that an action taken in retaliation for the exercise of a First
7    Amendment right is actionable under § 1983.  <u>See</u> <u>Brodheim v. Cry</u>, 584 F.3d 1262,
8    1269 (9th Cir. 2009); <u>Hines v. Gomez</u>, 108 F.3d 265, 267 (9th Cir. 1997); <u>Pratt v.</u>
9    <u>Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995).  This includes the right to petition the
10   government for redress of grievances.  <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d
11   1310, 1314 (9th Cir. 1989); <u>see also</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir.
12   2012); <u>Brodheim</u>, 584 F.3d at 1269 ("It is well-established that, among the rights they
13   retain, prisoners have a First Amendment right to file prison grievances."); <u>Rhodes</u>
14   <u>v. Robinson</u>, 408 F.3d 559, 567 (9th Cir. 2005) (as amended) ("Of fundamental
15   import to prisoners are their First Amendment rights to file prison grievances."
16   (citation omitted)).  To state a viable claim for retaliation in violation of the First
17   Amendment in the prison context, a plaintiff must show five basic elements: "(1) An
18   assertion that a state actor took some adverse action against an inmate (2) because of
19   (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's
20   exercise of his First Amendment rights, and (5) the action did not reasonably advance
21   a legitimate correctional goal." <u>Brodheim</u>, 584 F.3d at 1269 (quoting <u>Rhodes</u>, 408
22   F.3d at 567-68); <u>see also</u> <u>Watison</u>, 668 F.3d at 1114.  To satisfy the causation
23   element, plaintiff must show that his constitutionally-protected conduct was a
24   "substantial" or "motivating" factor for the alleged retaliatory action.  <u>See</u> <u>Mt.</u>
25   <u>Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287, 97 S. Ct. 568, 50
26   L. Ed. 2d 471 (1977); <u>Brodheim</u>, 584 F.3d at 1271.  Moreover, the chilling inquiry
27   is governed by an objective standard, and "the infliction of harms other than a total
28   chilling effect can [also] establish liability" for retaliatory conduct. <u>See, e.g., Rhodes</u>,

408 F.3d at 569; <u>Mendocino Env't Ctr. v. Mendocino Cnty.</u>, 192 F.3d 1283, 1300 (9th Cir. 1999). Finally, the plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. <u>See</u> <u>Pratt</u>, 65 F.3d at 806. A plaintiff may do so "by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious . . . or that they were 'unnecessary to the maintenance of order in the institution.'" <u>Watison</u>, 668 F.3d at 1114-15 (citations omitted).

Here, plaintiff raises vague references to "retaliation" and a "cover-up" as a result of his grievance regarding the February 2010 strip searches. (<u>See</u> Compl. Att. at 1, 4.) As best the Court can glean from the allegations, plaintiff contends that defendants Dimmitt and Caplan filed a CDC 115 alleging falsification of an inmate appeal because plaintiff filed a grievance against defendants Read and Ellis as a result of the strip searches.

Plaintiff's confusing, vague, and conclusory allegations that he was subjected to retaliation because he filed a grievance against two of the defendants is insufficient to satisfy plaintiff's burden of establishing that the substantial or motivating factor behind the filing of the CDC 115 was plaintiff's protected First Amendment activity. If anything, the record reflects that the CDC 115 may have been issued for a legitimate penological interest, namely, to investigate a claim of an alleged, and possibly improper, agreement between a prisoner and a correctional officer. Further, plaintiff does not appear to be challenging the allegations in the CDC 115, but rather contends that the CDC 115 was issued in an untimely manner. (<u>See</u> Dkt No. 50 at 3.) It is incumbent on plaintiff to allege specific facts, rather than conclusions and vague references, and to set forth the specific retaliatory actions and how such actions were motivated by plaintiff's administrative grievance. As currently pled, plaintiff has not met this burden.

Accordingly, even taking the allegations of the Complaint as true and in the light most favorable to him, plaintiff has failed to allege sufficient facts from which

a reasonable inference could be drawn that any constitutionally-protected conduct was a substantial or motivating factor for any alleged retaliatory action by the named defendants. Put another way, any allegations that plaintiff's constitutionally protected activity was a substantial or motivating factor for any retaliatory conduct do not rise "above the speculative level." See Twombly, 550 U.S. at 555; see also Iqbal, 129 S. Ct. at 1952 (plaintiff "would need to allege more by way of factual content to 'nudg[e]' his claim of purposeful discrimination 'across the line from conceivable to plausible'") (quoting Twombly, 550 U.S. at 570) (alteration in original).[4]

**V.  Plaintiff's allegations are insufficient to state a federal civil rights claim pursuant to the Fourth Amendment against any named defendant.**

To the extent plaintiff is purporting to state a claim pursuant to the Fourth Amendment, plaintiff's allegations are insufficient. As best the Court can glean from plaintiff's allegations, plaintiff contends that his Fourth Amendment rights were violated when he was forcibly subjected to two strip searches in February 2010 without being provided a reason for the searches. During these searches, he was required to expose his buttocks to defendants Read and Ellis.

The Fourth Amendment right to be secure against unreasonable searches and seizures "extends to incarcerated prisoners; however, the reasonableness of a

---

[4]    Plaintiff has likewise failed to sufficiently allege a violation of his First Amendment rights based on his contention that when he asked defendants Read and Ellis why they were searching him, one of them responded, "'[s]hut the fuck up' we can do this." (Compl. at 5.)  Plaintiff has neither identified a constitutionally protected right, let alone demonstrated how defendants Read and Ellis's interfered with such right. To the extent plaintiff may be attempting to allege a claim of retaliation based on Read and Ellis's comment, plaintiff has not purported to establish the five basic elements for asserting such a claim. See Brodheim, 584 F.3d at 1269.

17

1    particular search is determined by reference to the prison context." Thompson v.

2    Souza, 111 F.3d 694, 699 (9th Cir. 1997) (citation omitted); see also Way v. Cnty. of

3    Ventura, 445 F.3d 1157, 1160 (9th Cir. 2006). "Maintaining institutional security and

4    preserving internal order and discipline are essential goals that may require limitation

5    or retraction of the retained constitutional rights" of prisoners. Bell v. Wolfish, 441

6    U.S. 520, 546, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).   As such, the alleged

7    infringement of a prisoner's constitutional rights must be "evaluated in the light of

8    the central objective of prison administration, safeguarding institutional security."

9    Bull v. City & Cnty. of S.F., 595 F.3d 964, 972 (9th Cir. 2010) (en banc) (citation

10   omitted); see also Bell, 441 U.S. at 546.   Prison officials should be accorded "wide-

11   ranging deference in the adoption and execution of policies and practices that in their

12   judgment are needed to preserve internal order and discipline and to maintain

13   institutional security."   Bell, 441 U.S. at 547; see also Florence v. Bd. of Chosen

14   Freeholders of Cnty. of Burlington, 566 U.S. –, 2012 WL 1069092, at *7 (2012).

15   "[I]n the absence of substantial evidence in the record to indicate that the [prison]

16   officials have exaggerated their response to [legitimate security interests,] courts

17   should ordinarily defer to their expert judgment in such matters." Bell, 441 U.S. at

18   548 (citation omitted); Florence, 2012 WL 1069092, at *7 (same).   In the context of

19   the Fourth Amendment, courts must conduct a balancing of the need for a particular

20   search against the invasion of personal rights that the search entails.   "Courts must

21   consider the scope of the particular intrusion, the manner in which it is conducted, the

22   justification for initiating it, and the place in which it is conducted." Bell, 441 U.S.

23   at 559.   Strip searches that are excessive, vindictive, harassing, or unrelated to any

24   legitimate penological interest may violate the Fourth Amendment. Michenfelder v.

25   Sumner, 860 F.2d 328, 332 (9th Cir. 1988).

26   / / /

27   / / /

28   / / /

18

1   Here, plaintiff attaches a copy of the relevant CDCR policy, pursuant to Cal.
2   Code Regs. tit. 15 § 3287(b), authorizing periodic strip searches.[5] (Comp. Att. at 14-
3   15.) Cal. Code Regs. tit. 15 § 3287(b) provides:

4   An inmate is subject to an inspection of his or her person, either
5   clothed or unclothed, when there is a reasonable reason to believe the
6   inmate may have unauthorized or dangerous items concealed on his or
7   her person, or that he or she may have been involved in an altercation of
8   any kind. Such inspections may also be a routine requirement for inmate
9   movement into or out of high security risk areas. Random or spot-check
10   inspections of inmates may also be authorized by the institution head to
11   prevent possession and movement of unauthorized or dangerous items
12   and substances into, out of, or within the institution. Visual daily
13   inspections of inmates shall be made to ensure compliance with
14   departmental grooming standards. All such inspections shall be
15   conducted in a professional manner which avoids embarrassment or
16   indignity to the inmate. Whenever possible, unclothed body inspections
17   of inmates shall be conducted outside the view of others.

18

19   Plaintiff does not contend that this policy is unreasonable, and that it therefore
20   violates the Fourth Amendment. Indeed, considering the prison's significant interest
21   in maintaining security and controlling contraband, this policy appears to be valid as
22   it is reasonably related to legitimate penological interests. See Bell, 441 U.S. at 550-
23   51; Florence, 2012 WL 1069092, at *6-7; Nunez, 591 F.3d at 1227-28. Plaintiff has
24   not alleged otherwise. Rather, plaintiff contends that the particular strip searches to
25   / / /

26

27   [5]   Plaintiff cites to an earlier, but substantially similar, version of Cal. Code
28   Regs. tit. 15 § 3287(b). Subsection (b) was amended on January 20, 2010.

19

1  which he was subjected were unreasonable.  He contends that the searches were

2  "sexual" in nature and constituted a hate crime.  (Compl. Att. at 6.)

3       However, even considering plaintiff's conclusory allegations that defendants

4  Read and Ellis targeted plaintiff for non-penological reasons, such allegations are

5  insufficient to state a Fourth Amendment violation.  <u>See</u> <u>Nunez</u>, 591 F.3d at 1228.

6  An action is reasonable under the Fourth Amendment, regardless of the individual

7  officer's state of mind as long as the circumstances, viewed objectively justify the

8  action.  <u>Id.</u>  Although plaintiff vaguely contends that the searches were sexual in

9  nature and constituted a hate crime, plaintiff has not provided any specific facts

10  regarding how the searches were conducted in such a manner.  Indeed, the record

11  reflects that plaintiff was searched because he was found "w[a]ndering in the Facility

12  II corridor" (Compl. Att. at 25), which would reasonably give rise to a security

13  concern.  As currently pled, the searches appear reasonably related to a legitimate

14  penological interest and plaintiff has not explained how the searches went beyond

15  what was reasonably necessary in order to protect these governmental interests.

16       Accordingly, the Court concludes that plaintiff has not adequately alleged a

17  Fourth Amendment violation.

18

19  **VI.**    **The allegations of the Complaint are insufficient to state a claim for**

20      **violation of plaintiff's due process rights under the Fourteenth**

21      **Amendment against any defendant.**

22       Plaintiff vaguely references violations of his due process rights.  As best the

23  Court can glean from the allegations of the Complaint, plaintiff's claim appears to be

24  based on the allegedly improper strip searches conducted in February 2010.

25       The Supreme Court has recognized a privacy interest in avoiding disclosure of

26  personal matters.  <u>See</u> <u>Whalen v. Roe</u>, 429 U.S. 589, 599, 97 S. Ct. 869, 51 L. Ed. 2d

27  64 (1977).  While the Court "has not recognized that an interest in shielding one's

28  naked body from public view should be protected under the rubric of the right to

privacy," <u>Grummett v. Rushen</u>, 779 F.2d 491, 494 (9th Cir. 1985), the interest in avoiding disclosure of personal matters "has been infrequently examined . . . [and] its contours remain less than clear." <u>Davis v. Bucher</u>, 853 F.2d 718, 719 (9th Cir. 1988). Under Ninth Circuit law, prisoners retain a limited right to bodily privacy. <u>Michenfelder</u>, 860 F.2d at 333; <u>see</u> also <u>Byrd v. Maricopa Cnty. Sheriff's Dep't</u>, 629 F.3d 1135, 1140 (9th Cir. 2011) (explaining that "[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity") (citation omitted, alterations in original). In assessing the right, courts must examine whether the alleged impingement on the prisoner's right to privacy was reasonably related to legitimate penological interests. <u>Michenfelder</u>, 860 F.2d at 334. "[I]f a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted . . . ." <u>See Bell</u>, 441 U.S. at 539; <u>see</u> also <u>Byrd</u>, 629 F.3d at 1140 (For purposes of a substantive due process claim, the plaintiff must allege or produce evidence that the defendants expressed an intent to punish him or that the search was unrelated to a legitimate governmental objective.); <u>Lopez v. Youngblood</u>, 609 F. Supp. 2d 1125, 1140-41 (E.D. Cal. 2009).

Here, plaintiff has failed to allege or produce evidence that defendants Read or Ellis expressed an intent to punish plaintiff or that the search was unrelated to a legitimate government interest. <u>See Byrd</u>, 629 F.3d at 1140. Indeed, as explained above, plaintiff has provided a copy of the particular CDCR policy at issue, which expressly authorizes prison officials to conduct a strip search for security purposes. Protecting internal security is a legitimate goal under which a prison official would be justified in infringing on plaintiff's right to privacy. <u>Id.</u> The record reflects that plaintiff was searched because he was found wandering in the Facility II corridor. (Comp. Att. at 25.) In the absence of evidence of an intent to punish or evidence that

defendants' actions were unrelated to a legitimate governmental objective, plaintiff cannot allege a Fourteenth Amendment due process claim. <u>Byrd</u>, 629 F.3d at 1140. Accordingly, as currently pled, plaintiff has not adequately alleged a due process violation based on his strip search.[6]

## VII. The allegations of the Complaint are insufficient to state a claim for violation of plaintiff's Eighth Amendment rights against any defendant.

Plaintiff's purported Eighth Amendment claim, like his other claims, appears to be predicated on the two strip searches conducted in February 2010. However, as explained below, plaintiff's allegations are insufficient to state a violation of his Eighth Amendment rights.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (as amended). In order to state a claim for violation of the Eighth Amendment, a plaintiff must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." <u>Foster v. Runnels</u>, 554 F.3d 807, 812 (9th Cir. 2009) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

"The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" <u>Farmer</u>, 511 U.S. at 834. This prong requires that the defendants have a "sufficiently culpable state of

---

[6]     The Court also notes that at least one court has concluded that because a claim that a strip search violated a prisoner's constitutional rights is covered by the Fourth and Eighth Amendments, a plaintiff may not also pursue a Fourteenth Amendment due process claim based on the same alleged violation. <u>See</u>, <u>e.g.</u>, <u>Jacobs v. Sullivan</u>, No. 1:05-cv-01625-SKO PC, 2010 WL 4220557, at *7 (E.D. Cal. Oct. 20, 2010).

mind." Id. (citation omitted). In cases involving prison conditions, the state of mind is one of deliberate indifference to the inmate's healthy or safety. Id.; see also Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.").

"Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.'" Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citations omitted). As such, to support a cognizable Eighth Amendment claim based on a strip search, the plaintiff must allege a risk of harm beyond a "momentary discomfort." Jordan v. Gardner, 986 F.2d 1521, 1526 (9th Cir. 1993); see also Somers v. Thurman, 109 F.3d 614, 624 (9th Cir. 1997) (as amended). In Jordan, for instance, the Court found that the objective prong had been met where the plaintiffs suffered pain in being subjected to a cross-gender clothed body search involving inmate touching. The record suggested "that women experience unwanted intimate touching by men differently from men subject to comparable touching by women" due to "the differences in general socialization" that "would lead to differences in the experiences of men and women with regard to sexuality." Jordan, 986 F.2d at 1526. In contrast, the Ninth Circuit rejected a similar Eighth Amendment argument in Somers, where the cross-gender search did not involve any physical contact or psychological trauma. In Somers, the Ninth Circuit rejected a male prisoner's contention that his Eighth Amendment rights were violated by subjecting him to a visual body cavity search conducted by female prison guards, where the female guards "pointed at him" and "joked among themselves." The Ninth Circuit concluded that such cross-gender searches could not be called inhumane particularly when considered in relation to other cases where courts have found Eighth Amendment violations based on more severe conduct. 109 F.3d at 623. "To hold that

1  gawking, pointing, and joking violates the prohibition against cruel and unusual

2  punishment would trivialize the objective component of the Eighth Amendment test

3  and render it absurd."  Id. at 624.

4        Here, like in Somers, plaintiff has not alleged more than a minimal or

5  momentary discomfort in being subjected to two strip searches.  Indeed, plaintiff's

6  allegations are largely devoid of any details regarding the extent of harm or injury he

7  allegedly suffered, other than his conclusory allegation that he was required to expose

8  his buttocks.  Plaintiff has not alleged that the searches involved physical contact, that

9  the searches were conducted by the opposite gender, or that the searches were

10  witnessed by others.  Nothing indicates that plaintiff experienced or would likely

11  experience any psychological trauma as a result of the brief searches.  See Somers,

12  109 F.3d at 624.  As such, plaintiff's allegations are insufficient to support a finding

13  that plaintiff was in substantial risk of serious harm as a result of the strip searches.

14        Finally, to the extent plaintiff may be purporting to state a claim pursuant to the

15  Eighth Amendment based on his contention that defendants Read and Ellis's told him

16  to "[s]hut the fuck up," in response to his inquiry as to why he was being searched,

17  neither verbal harassment nor the mere making of threats gives rise to an Eighth

18  Amendment claim.  See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended

19  by 135 F.3d 1318 (9th Cir. 1998) (verbal harassment is not cognizable as a

20  constitutional deprivation under § 1983); Oltarzewski v. Ruggiero, 830 F.2d 136, 139

21  (9th Cir. 1987) (verbal harassment or abuse is not constitutional deprivation under §

22  1983); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (prison guards' threat of

23  bodily harm failed to state a claim under §1983).[7]

24

25       [7]   Further, to the extent plaintiff may be attempting to raise a claim based

26  on a supervisory liability theory, such a basis of liability is inapplicable in the context

27  of a civil rights claim under 42 U.S.C. § 1983.  See, e.g., Iqbal, 129 S. Ct. at 1948-50

28  (reaffirming that the doctrine of respondeat superior is inapplicable to federal civil

                                                (continued...)

1   **VIII.  Defendants' claim of qualified immunity**

2          Defendants further contend that they are entitled to qualified immunity.  (Mot.

3   Mem. at 8.)  Qualified immunity shields a public official from a suit for damages if,

4   under the plaintiff's version of the facts, a reasonable person in the defendant's

5   position could have believed that his or her conduct was lawful in light of clearly

6   established law and the information the person possessed at the time the conduct

7   occurred.  Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589

8   (1991) (per curiam);  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.

9   Ed. 2d 396 (1982);  Schwenk v. Hartford, 204 F.3d 1187, 1195-96 (9th Cir. 2000).

10  The qualified immunity standard "provides ample protection to all but the plainly

11  incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S.

12  335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

13         Prior to the Supreme Court's decision in Pearson v. Callahan, 555 U.S. 223,

14  129 S. Ct. 808, 172 L. Ed. 2d 565 (2009), courts considering claims of qualified

15  immunity employed a two-step process as established in Saucier v. Katz, 533 U.S.

16  194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  In Pearson, the Supreme Court

17  reversed its earlier rule and determined that courts have the discretion in structuring

18  their analyses of qualified immunity claims.  555 U.S. at 242; Phillips v. Hust, 588

19  F.3d 652, 655 (9th Cir. 2009) (observing that the Supreme Court in Pearson

20  "abandoned the rigid two-step order of battle").  Rather, lower courts may "exercise

21  their sound discretion in deciding which of the two prongs of the qualified immunity

22  analysis should be addressed first in light of the circumstances in the particular case

23  at hand."  Pearson, 555 U.S. at 236.

24         Here, plaintiff has not alleged facts in his Complaint that could make out a

25  violation of a constitutional right.  See Pearson, 555 U.S. at 232.  As such, the Court

26

27         [7](...continued)

28  rights actions).

                                          25

1   is unable to evaluate whether defendants are entitled to qualified immunity as to any

2   of plaintiff's claims.  Unless and until plaintiff has alleged a constitutional violation,

3   there can be no determination regarding the applicability of qualified immunity.  See

4   Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001) ("[A] Rule 12(b)(6) dismissal

5   is not appropriate unless we can determine, based on the complaint itself, that

6   qualified immunity applies.") (citation omitted).  Accordingly, the Court recommends

7   that defendants' Motion to Dismiss plaintiff's claims based on qualified immunity

8   grounds be denied without prejudice.

9

10                                    **ORDER**

11        For the foregoing reasons, IT IS THEREFORE ORDERED as follows:

12        1.    Defendants' Motion to Dismiss plaintiff's Complaint based on Eleventh

13   Amendment immunity is DENIED as moot;

14        2.    Defendants' Motion to Dismiss plaintiff's Complaint for failure to

15   exhaust administrative remedies is DENIED without prejudice;

16        3.    Defendants' Motion to Dismiss plaintiff's Complaint for failure to

17   comply with Fed. R. Civ. P. 8 and failure to state a claim upon which relief can be

18   granted is GRANTED with leave to amend;

19        4.    Defendants' Motion to Dismiss plaintiff's Complaint based on qualified

20   immunity is DENIED without prejudice ; and

21        5.    If plaintiff still desires to pursue this action, he is ORDERED to file a

22   First Amended Complaint remedying the deficiencies discussed above within thirty

23   (30) days of the service of this Order.

24        If plaintiff chooses to file a First Amended Complaint, it should bear the docket

25   number assigned in this case; be labeled "First Amended Complaint"; and be

26   complete in and of itself without reference to the original Complaint or any other

27   pleading, attachment, or document.  The clerk is directed to send plaintiff a blank

28   Central District civil rights complaint form, which plaintiff is encouraged to utilize.

                                        26

1      **Plaintiff is admonished that, if he fails to timely file a First Amended**

2  **Complaint within the time allotted can be construed as a failure to prosecute the**

3  **action and, therefore, can be a basis for dismissal.**

4

5  DATED: April 12, 2012

6

7

8                              THE HONORABLE DAVID T. BRISTOW
                               UNITED STATES MAGISTRATE JUDGE

9

10                                    **NOTICE**

      Reports and Recommendations are not appealable to the Court of Appeals, but

11  may be subject to the right of any party to file Objections as provided in the Local

12  Rules and review by the District Judge whose initials appear in the docket number.

13  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be

14  filed until entry of the Judgment of the District Court.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       27